

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**PETER W. BROCKER**
*Senior Counsel*
*Phone: (212) 356-2332*
*Fax: (212) 356-3509*
*pbrocker@law.nyc.gov*

May 5, 2022

**Via ECF**
Hon. P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  Rebecca Margolies v. City of New York, et al.,
           21 Civ. 10839 (PKC)

Your Honor:

      I am a Senior Counsel in the Office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for the City of New York, Bill de Blasio, Dermot Shea, and Terence Monahan ("Defendants") in the above-referenced matter. I write to respectfully request a pre-motion conference in anticipation of Defendants' partial motion to dismiss Rebecca Margolies's ("Plaintiff") first amended complaint (hereinafter, the "Amended Complaint"). (Dkt. No. 16). Defendants anticipated motion to dismiss resolves all claims in this litigation except Plaintiff's claim for failure to train on the inclusion of jail support as essential workers. The next conference in this matter is an initial conference currently scheduled for June 17, 2022 at 10:30am.

      By way of brief background, Plaintiff alleges that on June 4, 2020, at approximately 10:45 pm, while she was providing "jail support" to individuals arrested that evening while protesting in New York City, she was arrested for a violation of Mayoral Emergency Executive Order No. 119 ("Exec. Order 119"), which established a curfew from 8:00 p.m. to 5:00 a.m. (*See* Complaint, Dkt. No. 16, ¶¶ 51-54). Plaintiff alleges that she was placed in metal handcuffs, issued a summons at approximately midnight, and thereafter released from the custody of the NYPD. (*Id.*, at ¶¶ 101-102). Plaintiff now brings federal claims for, *inter alia*, false arrest, excessive force, First Amendment retaliation, and municipal liability. (*Id.*, at ¶¶ 204-263 (nine federal causes of action). Plaintiff also brings several causes of action pursuant to New York State law. (*Id.*, at ¶¶ 264-277 (eight state causes of action)).

    **I.**    **Standard of Review**

      Pursuant to Rule 12(b)(6), a pleading is properly dismissed when, read in the light most favorable to the non-movant, it "fail[s] to state a claim upon which relief can be granted." Fed. R.

1

Civ. P. 12. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should therefore dismiss a complaint when it appears that a plaintiff has failed to plead a plausible claim of relief. (*See Id.*). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557; *see also*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Finally, although the court must accept plaintiff's factual allegations as true, it does not need to accept legal conclusions or other conclusory statements. *E.g.*, *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

II. **Plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation are properly dismissed because probable cause existed to arrest het.**

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted). Further, probable cause is also a defense to a claim of First Amendment retaliation. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("Plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (The existence of probable cause "will also defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, to silence her."). Finally, in the context of a malicious prosecution claim, probable cause to prosecute is a complete defense to a claim of malicious prosecution. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

Exec. Order 119 established an emergency curfew in the City of New York prohibiting all persons that were not exempt, *e.g.,* essential workers, from being out in New York City from 8:00pm to 5:00am, beginning on June 3, 2020. "Failure to comply with this Order shall result in orders to disperse, and any person who knowingly violates the provisions of this order shall be guilty of a class B misdemeanor." Exec. Order 119 (emphasis added). As this Court made clear in analyzing these very executive actions, "[t]he conducts prohibited by [Exec. Order No. 118] was being out in public between certain hours – not failing to obey a dispersal order*." In re New York City Policing During Summer 2020 Demonstrations*, No. 20 Civ. 8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437, at *68 (S.D.N.Y. Jul. 9, 2021).

Here, Plaintiff's claims are predicated on an arrest that she claims lacked probable cause. However, Plaintiff admits to being out in public at 10:45 p.m., well past the 8:00 p.m., curfew and thus in violation of Exec. Order 119 (Complaint, at ¶¶ 51-54). Nonetheless, Plaintiff contends that she was an essential worker doing "jail support" and therefore, exempt from the dictates of Exec. Order 119. (*Id*., at ¶¶ 51-54 & 67). However, Exec. Order 119 does not specifically include "jail support" in the essential worker category, and there is simply no indication that any of her arresting officers knew or had reason to believe that she was an essential worker prior to her arrest within

the meaning of Exec. Order 119.[1] As such, there was probable cause for her arrest and prosecution when she was arrested at 10:45 p.m., on June 4, 2020.

Alternatively, at a minimum, arguable probable cause existed to arrest Plaintiff and the police officers who arrested Plaintiff are entitled to qualified immunity from suit. *See*, *e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curium) ("[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"). To the extent that Plaintiff is correct in alleging that the Mayor intended jail support to be classified as essential, the defendant police officers that arrested Plaintiff are entitled to qualified immunity, because they relied on the executive order as written, and because, according to plaintiff, no guidance or training was given that jail support was intended to be essential.

### III. Plaintiff's *Monell* claims against the City of New York, except for the claim for failure to train, are properly dismissed.

To hold a municipality liable under federal law, a Plaintiff must plausibly allege one of four different types of violations: (1) the existence of an unconstitutional municipal policy, *see Monell v Dep't of Social Services*, 436 U.S. 658, 690 (1978); (2) the official responsible for establishing policy, with respect to the subject matter in question to the specific action, caused the alleged violation of Plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion), *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff's complaint states all four theories of liability, based on several different alleged constitutional violations, including *Monell* liability stemming from, *inter alia*, the use of excessive force, excessive detention, the use of flex-cuffs.(Complaint, at ¶¶ 171 & 257). However, Plaintiff's allegations regarding the events of June 4, 2020 bear no connection to any of these claims. For instance, Plaintiff does not allege that she was ever placed in "flex-cuffs," or subjected to force at all. Further, Plaintiff's claims that relate to her experience are not sufficiently pled to state a claim for *Monell* liability that is plausible. For instance, Plaintiff claims that there was an atmosphere of "total lawlessness" that led to her arrest, (*id.*, at ¶ 258), but does not plead facts tending to show that the municipal policy-makers were on notice of a custom of falsely arresting jail support workers in the days leading up to her arrest.[2]

---

[1] Plaintiff's imputation of this knowledge that Plaintiff was an essential worker to these <u>unidentified</u> officers appears to be pure speculation. (*See* Dkt. No. 16, at ¶ 71).

[2] Defendants, with the benefit of additional space, will address each of Plaintiff's remaining claims in more detail in their ultimate motion to dismiss.

Thank you for your consideration of this matter.

Respectfully submitted,

*Peter W. Brocker /s//*

Peter W. Brocker, Esq.
*Senior Counsel*

cc: All Counsel of Record (via ECF)